573 So.2d 628 (1991)
Ann P. BARNES, Plaintiff/Appellant,
v.
NEW HAMPSHIRE INSURANCE COMPANY, et al., Defendant/Appellee.
No. 22098-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
Stephen A. Glassell, Shreveport, for plaintiff/appellant.
Cook, Yancey, King & Galloway by Kelly W. Strickland, for defendant/appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The plaintiff, Ann P. Barnes, appeals from a trial court judgment dismissing her claim against a homeowner, on whose property she fell while leaving a garage sale, and his insurer. For the reasons assigned below, we affirm the judgment of the trial court.

FACTS
On November 21, 1987, the plaintiff attended a garage sale at the home of Carolyn and James Paul in Shreveport, Louisiana. The garage sale was a two-family sale, orchestrated by Mrs. Paul and her mother, Rosemary Breckenridge. Mrs. Paul set up display tables in her open, two-vehicle carport. Mrs. Breckenridge parked her car close to the carport and displayed her sales items on the trunk and hood of the car and on the ground around the vehicle.
The sale began at 7:00 a.m. The plaintiff arrived shortly thereafter. It was a clear, dry day. The plaintiff parked in the driveway near the road. She then walked up the driveway to the carport and began browsing through the sales items. She selected a small cut glass vase from among Mrs. Breckenridge's wares. The plaintiff purchased the vase and then began to leave.
Mrs. Paul and Mrs. Breckenridge both observed the plaintiff as she was leaving. She walked several steps down the driveway, away from the carport and Mrs. Breckenridge's car. She turned back to look towards the sales area, but continued to walk in the opposite direction, not looking where she was going. The plaintiff then stepped off the side of the driveway and fell at a spot where there was a two to three inch drop-off from the concrete drive-way *629 to the ground. The vase broke, cutting her left hand.
Upon observing the accident, Mrs. Paul summoned her husband, who had emergency medical training. Mr. Paul immediately rendered first aid to the plaintiff and transported her to a hospital emergency room where she received more extensive treatment.
Plaintiff brought suit against Mr. Paul and his insurance company alleging that Mr. Paul was negligent in failing to provide a safe walkway and adequate lighting in front of his residence. She contends that she has a permanent disability to her left hand, and, although she had recently retired from South Central Bell, she had been planning another career in her trade as a computer operator. Because of her injury, she contends the pursuit of such a career is unlikely.
After a bifurcated trial on the issue of liability only, the trial court issued an excellent written opinion in which it dismissed the plaintiff's case, finding that she had failed to carry her burden of proof. The trial court found that the plaintiff failed to show that the elevation of the driveway constituted an unreasonably dangerous area or condition. Specifically, the trial court found that the area was only made dangerous by the plaintiff's failure to observe where she was walking.
In this appeal, plaintiff assigns as error the trial court's failure to find the condition of the driveway at the point of her fall to be defective and thereby creating an unreasonable risk of harm. She also contends that, assuming the validity of her first assignment, the trial court erred in failing to apply comparative fault.

UNREASONABLE RISK OF HARM
The plaintiff contends that under a theory of either negligence or strict liability, the drop-off constituted a defect for which the defendants should be held liable and that the defendants had a duty to warn her of this allegedly dangerous condition. The plaintiff asserts that under comparative negligence the defendants should be assessed liability of at least 50%.
The trial court found that the plaintiff failed to show that the elevation constituted an unreasonably dangerous condition. It further found that the area was only made dangerous by the plaintiff's inattentiveness. We agree.
In a case alleging strict liability and negligence as alternate theories of liability on one having custody of immovable property, the difference between the two theories is the proof that each requires. Under a negligence theory, plaintiff must prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a strict liability theory, plaintiff is relieved of proving this knowledge. Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App. 2d Cir.1988), writ denied 524 So.2d 520 (La.1988); Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied 462 So.2d 1248 (La.1985). Under either theory, the plaintiff has the burden of proving the following: (1) that the defendants had custody of the property causing the damage; (2) that the property was defective because it had a condition that created an unreasonable risk of harm; and (3) that the defect was the cause in fact of the injury. Carter, supra; Waters, supra.
There is no question that the Pauls had custody of their driveway. Thus, the question becomes whether the driveway was defective. After a careful review of the record and the jurisprudence, we find that the plaintiff failed to demonstrate that the two to three inch drop-off constituted an unreasonable risk of harm.
The evidence demonstrates that at the time of the plaintiff's fall the sun had risen and there was adequate lighting. Mrs. Paul testified that it was a clear, sunny day, and that the sun had risen at about 6:50 a.m. It is common knowledge that lighting conditions change drastically and rapidly in the first moments after sunrise. The plaintiff arrived at about 7:00 a.m. and remained for approximately 10 to 15 minutes. The Pauls' automatic outside lights *630 near the driveway, which come on and go off according to the presence or lack of light, had already gone off. The Pauls had their carport light on. Mrs. Breckenridge's car was not under the carport, yet the plaintiff testified that she had no difficulty viewing the sale items or the flower vase that she purchased.
We are especially persuaded of the correctness of the trial court's findings by the photographs of the driveway admitted into evidence. They reveal an ordinary driveway with no greater elevation differences than one might expect when going from a driveway to a residential lawn. Additionally, the testimony established that the ground was hard, and Mrs. Paul had mowed and raked the yard the previous day in anticipation of the sale. The difference in elevation between these two completely different surfaces (the driveway and the ground) would have been readily visible to an attentive person exercising due care for her own safety.
The plaintiff testified that she "tripped on something." The record is devoid of any evidence of a foreign object or substance which could have precipitated her fall. Furthermore, the spot where she fell was about two feet from the expansion joint in the concrete driveway.
We find that the present situation is easily distinguishable from that where a shopper falls because the storeowner distracted the shopper's attention with merchandise displays and marketing techniques designed to attract attention to particular products. Cf. Lloyd v. TG & Y Stores Company, 556 So.2d 629 (La.App. 2d Cir. 1990). The rationale for the special rules relating to slip and fall accidents in shopping areas of self-service stores is that the very nature of self-service stores requires and entices customers to focus their attention elsewhere than upon the floor upon which they are walking. Speyrer v. Sziszaks, 559 So.2d 12 (La.App. 1st Cir.1990). Even in such cases, the duty of the storeowner is one of reasonable care under the circumstances, and the store owner is not the insurer of his customer's safety. Estes v. Kroger Company, 556 So.2d 240 (La. App. 2d Cir.1990), writ denied 559 So.2d 1360 (La.1990).
Furthermore, even as an invitee upon the Pauls' property, the plaintiff cannot recover. The duty owed by a landowner to a guest is the duty to discover any unreasonably dangerous conditions on the premises and to either correct the condition or warn of its existence. However, a landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner. Spencer v. Magee, 563 So.2d 564 (La.App. 4th Cir.1990). See also Waters, 521 So.2d at 792. Clearly, the slight difference in elevation between the driveway and the ground was as obvious to the plaintiff as to the Pauls.
The plaintiff cites several cases in support of her position. These cases include: Fontenot v. Hanover Insurance Company, 378 So.2d 461 (La.App. 3rd Cir.1979), affirmed in part, reversed in part 385 So.2d 238 (La.1980) [plaintiff tripped over an elevated portion of an uneven sidewalk which was concealed by grass growing through the sidewalk]; Wall v. Village of Tallulah, 385 So.2d 905 (La.App. 2d Cir.1980), writ denied 393 So.2d 737 (La.1980) [at night, plaintiff tripped over elevated portion of sidewalk which had been raised by growth of tree roots]; Carter v. Board of Supervisors of Louisiana State University, supra [plaintiff tripped on sidewalk which had sunken square]; and Gardner v. Campbell, 532 So.2d 292 (La.App. 3rd Cir.1988), writ denied 534 So.2d 446 (La.1988) [an asphalt overlay of an alleyway between buildings in a storage facility created a two to three inch drop-off in the road surface in a spot where a drain was located; plaintiff, who was walking backwards while helping to move a clothes dryer, fell after encountering the "raveled edge" of the drop-off.] However, unlike these cases, there is no evidence of any imperfection in the driveway in the present situation.
Additionally, the plaintiff presented no expert testimony to establish that the driveway was unsafe or that it concealed a *631 trap, as in other cases upon which she relies. See Johnson v. Acadiana Medical Center, Inc., 524 So.2d 811 (La.App. 3rd Cir.1988) [medical center had unapparent and unexpected six-inch drop-off at exit, the position of which violated the Life Safety Code and which was unsafe in the opinion of the architect who testified as an expert]; Carpenter v. Hartford Fire and Insurance Company, 537 So.2d 1283 (La. App. 2d Cir.1989) [design of store's one-step platform at exit was unreasonably dangerous because it required descent at an angle; trial court presented with conflicting expert testimony]; and Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990) [plaintiff tripped at restaurant entrance where there was one-inch elevation change between foyer floor and landing; both levels were covered by same tile, creating an illusion of one level; conflicting testimony of experts admitted].
In the present case, as noted by the trial court in its written opinion, Mrs. Barnes presented no expert testimony that the driveway was improperly constructed. Nor did she show that the driveway and adjoining area failed to meet any standards used in the construction industry, or was otherwise defective.
In Maples v. Merrimack Mutual Fire Insurance Company, 567 So.2d 1178 (La. App. 3rd Cir.1990), the appellate court disallowed recovery to a guest who fell on the homeowner's unimproved driveway while walking to her car after dark. The court acknowledged that property owners are obligated to keep their premises free of defects or conditions in the nature of hidden traps, dangers or pitfalls, which are unknown to the visitor and which would not be observed by him in the exercise of reasonable care. However, the court found that the presence of four to six inch ruts in an unimproved driveway was "neither unexpected nor out of the ordinary," and that the ruts did not amount to defects presenting "an unreasonable risk of injury to visitors." (Emphasis theirs) In the same vein, we reiterate our finding that a minor elevation difference between a driveway and the adjacent ground, such as found in this case, is not unreasonably dangerous to visitors.
Based on the foregoing, we find that the trial court judgment is correct. The only factor leading to the plaintiff's unfortunate injury was her failure to watch where she was walking. Cf. Deblois v. Republic/Vanguard Insurance Company, 537 So.2d 844 (La.App. 5th Cir.1989), writ denied 540 So.2d 331 (La.1989), reconsideration denied 541 So.2d 883 (La.1989), wherein recovery was denied to an inattentive plaintiff who claimed to have tripped "on something" at dusk on a sidewalk which had "ordinary cracks" in the concrete.
This assignment of error is meritless. Consequently, we pretermit any consideration in the plaintiff's second assignment of error pertaining to the assessment of comparative fault.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the plaintiff.
AFFIRMED.